WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Deyra Pamela Carranza Aguilar,

Plaintiff,

v.

OneAZ Credit Union,

Defendant.

No. CV-24-02657-PHX-SHD

**ORDER PRELIMINARILY APPROVING SETTLEMENT**

At issue is Plaintiff Deyra Pamela Carranza Aguilar's ("Plaintiff") Unopposed Motion for Preliminary Approval of Class Settlement. (Doc. 53 ("Motion" or "Mot.").) On August 25, 2026, I held a hearing on the motion, which seeks preliminary approval of a class settlement reached between Plaintiff and Defendant OneAZ Credit Union ("OneAZ"). (Doc. 55.) For the reasons stated below, the motion will be **granted**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Aguilar filed this putative class action on behalf of herself and a proposed class of other similarly situated individuals who allege Defendant denied them full access to financial products solely on the basis of their immigration status or alienage. (Mot. at 7–8.) Plaintiff is a Phoenix, Arizona resident and a recipient of Deferred Action for Childhood Arrivals ("DACA") since 2015. (*Id.* at 7.) As a DACA recipient, Plaintiff is authorized to work in the United States and possesses a "work only" social security number. (*Id.*)

In or around March 2022, Plaintiff and her family moved to Flagstaff, Arizona. (*Id.*)

To help address the anticipated increase in living expenses, Plaintiff approached OneAZ to refinance an automobile loan. (*Id.*) Plaintiff alleges that OneAZ declined to accept her application because, at that time, OneAZ's processing systems did not accept applications from DACA recipients. (*Id.*)

On October 1, 2024, Plaintiff filed this action against OneAZ, alleging alienage discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981. (Doc. 1 at 7.) Plaintiff alleges that OneAZ maintained a policy or practice of denying applicants financial products, services, or membership based on alienage and/or immigration status (the "Challenged Practice"). (*Id*. at 7-8.)

After the Complaint was filed, Plaintiff and Defendant (collectively, "the parties") engaged in "ongoing good faith negotiations to resolve" this matter, "ultimately resulting in an agreement in principle to settle this action." (Mot. at 7.) On November 24, 2025, the parties filed a notice of settlement. (Doc. 39.) On July 15, 2026, Plaintiff filed the Motion. (Mot.)

The proposed Settlement Class consists of 32 individuals identified in OneAZ's records who resided in the United States when they applied, or attempted to apply, for a OneAZ financial product or service and allegedly were denied full and equal consideration based on alienage or immigration status. (*Id*. at 7.) The proposed Settlement creates a $63,500.16 fund, from which each Class Member would receive an individual payment of $1,984.38 without submitting a claim form. (*Id*. at 8–9.) The Settlement also provides prospective corrective action: OneAZ represents that it has ceased the Challenged Practice and agrees not to deny financial products to, or discourage applications from, otherwise qualified applicants solely because of alienage or a closely associated proxy, unless binding law, rules, or regulations require it to do so. (*Id* at 8.) OneAZ also agrees to train its managers, supervisors, and staff on the corrective action set forth in the Settlement. (*Id*.)

## II. LEGAL STANDARD

Procedurally, the class certification and settlement approval process moves forward in two steps. At the first step, the court preliminarily determines whether the proposed

settlement class should be certified and whether the court "will likely be able to" approve the settlement proposal under the "fair, reasonable, and adequate" standard such that it can direct notice under Rule 23(e)(1) to all class members who would be bound by the settlement. *See* Fed. R. Civ. P. 23(e). At the second step, the court must evaluate whether to grant final approval. The Motion concerns only the first step.

### A. Standard for Class Certification

Rule 23(a), Federal Rules of Civil Procedure, provides that a class action may proceed only if four prerequisites are met:

1. Numerosity: "the class is so numerous that joinder of all members is impracticable";
2. Commonality: "there are questions of law or fact common to the class";
3. Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and
4. Adequacy of Representation: "the representative parties will fairly and adequately protect the interests of the class."

*Doyle v. Pekin Ins. Co.*, 2025 WL 1192752, at *2 (D. Ariz. 2025) (quoting Fed. R. Civ. P. 23(a)).

Additionally, Rule 23(b)(3) allows a court to certify a class action if it finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In conducting the requisite inquiry, courts consider several "pertinent" factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Supreme Court has explained that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Accordingly, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (citation omitted). The analysis a district court must engage in requires a "rigorous analysis" to ensure that the requirements of Rule 23(a) have been satisfied. *Id.* at 350–51.

**B. Standard for Preliminary Approval of Class Settlement**

Furthermore, Rule 23 requires approval by the district court of any class action settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). Approval requires the court to conduct a hearing and find that a settlement is "fair, reasonable, and adequate after considering" several factors. Fed. R. Civ. P. 23(e)(2) (setting forth factors). In the Ninth Circuit, district courts must balance eight factors when evaluating a proposed class settlement under Rule 23(e)(2):

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Some of these factors cannot be fully assessed until the final fairness hearing; therefore,

> [a]t the preliminary approval stage, courts need only evaluate whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly

> grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval.

*Doyle*, 2025 WL 1192752, at *3 (citing *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009)); *see also Saliba v. KS Statebank Corp.*, 2021 WL 2105608, at *4 (D. Ariz. 2021) (preliminary approval is evaluated simply for "whether the Settlement is within the range of reasonableness").

Nonetheless, for settlements reached prior to formal class certification, the Ninth Circuit has recognized that "there is an even greater potential [than normal] for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* "The district court's approval order must show not only that it has explored the *Churchill* factors comprehensively, but also that the settlement is not the product of collusion among the negotiating parties." *Id.* at 947 (citation modified); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (concerns about the fairness of settlement agreements "warrant special attention when the record suggests that the settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement"). Ultimately, however, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citation omitted).

## III. DISCUSSION

In the unopposed Motion, Plaintiff asks that I (1) preliminarily certify a class for settlement purposes (the "Settlement Class") and appoint Plaintiff and their counsel as the Settlement Class's representatives and counsel; (2) preliminarily approve the proposed Settlement; and (3) approve the notice plan and forms of notice to the Settlement Class. (Mot. at 2.) I first address whether Plaintiff has met her burden of establishing that the proposed Settlement Class meets the requirements of Rule 23(a) and (b)(3). I then examine

whether the Settlement is fair, reasonable and adequate under Rule 23(e) and the pertinent *Churchill* factors. Finally, because I will preliminarily approve the Settlement, I address whether the parties' proposed notice plan is adequate.

**A. Preliminary Certification of the Settlement Class**

The parties agree to the following definition of the Settlement Class: the 32 individuals who, according to Defendant's records, resided in the United States at the relevant time they applied for or attempted to apply for a financial product or service from OneAZ, but were denied full and equal consideration by OneAZ on the basis of alienage or immigration status. (Mot. at 7–8.) At the August 25, 2026 hearing, the parties defined "the relevant time," as the period in which the Challenged Practice occurred: from OneAZ's inception until January 26, 2024. (Doc. 55.) I will accept this modification and will define the Settlement Class as follows:

> All persons who, on or before January 26, 2024, resided in the United States at the time they applied for or attempted to apply for a financial product or service from OneAZ Credit Union, but were denied full and equal consideration by OneAZ Credit Union on the basis of alienage or immigration status.

For the reasons set forth below, the parties have established that the Settlement Class meets the requirements of Rule 23(a) and (b)(3).

**1. Rule 23(a)(1)—Numerosity**

To satisfy Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589–90 (N.D. Cal. 2015). The term "impracticable" has been construed to mean that joining all claimants would be difficult and inconvenient. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Although there is no set numerical threshold, courts presume that joining more than 40 claimants would be impractical. *See, e.g.*, *id.; Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In

general, courts find the numerosity requirement satisfied when a class includes at least 40 members.”). But the Supreme Court has explained that the “numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.” *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022) (*quoting General Tel. Co. of the NW., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)).

At the August 25, 2026 hearing, the parties argued that the proposed class size of 32 individuals meets the numerosity requirement. (Doc. 55.) First, the parties argued that there is no brightline rule regarding the numerosity requirement. (*Id.*) Second, the parties argued that joinder would be impracticable in this matter, as the proposed class size of 32 individuals is still large. (*Id.*) Third, they noted that the immigration status of the proposed class members further impacts the practicability of joinder in this matter. (*Id.*)

The Court finds that although the number of proposed class members is below the general 40-person threshold for satisfying numerosity, the circumstances of this case demonstrate that the proposed class is so numerous as to make joinder impracticable given the specific circumstances of this case. *See Rannis v. Recchia*, 380 F. App’x 646, 651 (9th Cir. 2010) (affirming 20-member class based on specific circumstances of the case). Accordingly, Rule 23(a)(1) is satisfied.

**2. Rule 23(a)(2)—Commonality**

Rule 23(a)(2) specifies that a class action present “questions of law or fact common to the class.” Fed. R. Civ. P. 23(a)(2). There must be a minimum of one common question of law or fact shared by the class to satisfy this provision. *See, e.g.*, *Wal-Mart*, 564 U.S. at 359 (“[F]or purposes of Rule 23(a)(2), even a single common question will do.” (cleaned up)). Accordingly, Rule 23(a)(2) presents a “‘relatively light burden’ that ‘does not require that all the questions of law and fact raised by the dispute be common . . . or that the common questions of law or fact predominate over individual issues.’” *Esparza v. SmartPay Leasing, Inc.*, 2019 WL 2372447, at *2 (N.D. Cal. 2019) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)).

Here, “Plaintiff challenges OneAZ’s financial product underwriting criteria and

policies that apply to all Class Members." (Mot. at 13–14.) Rule 23(a)(2) is therefore satisfied.

**3. Rule 23(a)(3)—Typicality**

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The inquiry focuses on "whether other members have the same or similar injury as [the class representatives], whether the action is based on conduct which is not unique to the [representatives], and whether other class members have been injured by the same conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quotation marks omitted); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The representatives' claims "need not be substantially identical" to other class members' claims to satisfy the typicality requirement. *Parsons*, 754 F.3d at 685 (citation omitted). Thus, if the representatives' and other class members' claims arise from a similar course of conduct and share the same legal theory, certain factual differences or differing damages may not necessarily preclude typicality. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116–18 (9th Cir. 2017) (holding that "typicality is not defeated" when a representative plaintiff's "precise injuries are [not] identical" to the class and her "damages differ[ed] from the damages of some class members").

In this case, Rule 23(a)(3) is satisfied because—like the other class members—"(1) [Plaintiff] was legally residing in the United States (2) she attempted to apply for a financial product from OneAZ and (3) her application was rejected based solely on her alienage or immigration status." (Mot. at 12–13.)

**4. Rule 23(a)(4)—Adequacy**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The inquiry under this provision "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As the Supreme Court has explained, "a class representative must be part of the class and 'possess the same

interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). Courts in the Ninth Circuit ask the following questions when determining whether class representatives adequately represent the class: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012). "The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)." *Whitehead v. Amica Mut. Ins. Co.*, 2025 WL 870990, at *8 (D. Ariz. 2025) (finding no conflict of interest "especially in light of the commonality and typicality requirements being met") (citation modified).

Plaintiff and her counsel satisfy Rule 23(a)(4) because they will fairly and adequately represent the interests of the class. "Plaintiff has the same interests as other Class Members" and "has no conflicts of interest with the Class Members"; indeed, all class members "stand to benefit substantially from Plaintiff's pursuit of damages on their behalf." (Mot. at 13.) Moreover, her counsel, the Mexican American Legal Defense and Educational Fund ("MALDEF") "has extensive experience litigating complex civil rights class actions." (*Id.*)

**5. Rule 23(b)(3)**

Plaintiff seeks class certification pursuant to Rule 23(b)(3), which provides for class treatment when (a) questions of law or fact common to class members predominate over questions affecting individual members, and (b) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

a. <u>Predominance</u>

Although the predominance requirement is similar to Rule 23(a)(2)'s commonality requirement, it is "even more demanding." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The predominance inquiry "focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quotation marks omitted). Thus, "courts have a duty to take a close look at whether common questions predominate over individual ones to ensure that individual questions do not overwhelm questions common to the class." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019) (quotation marks omitted). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quotation marks omitted), *overruled on other grounds by Wal-Mart*,564 U.S. 338.

Here, the common question shared by all class members—the denial of access to financial products—predominates over any individual questions that may exist.

b. <u>Superiority</u>

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In this case, classwide litigation is superior to other methods of litigation because individual class members will not need to individually pursue their rights, and the issues presented in this action are consolidated before the Court.

Because Plaintiff's proposed Settlement Class meets the requirements of Rules 23(a) and (b), the class will be certified for settlement purposes.

**B. Preliminary Approval of the Settlement**

Plaintiff seeks preliminary approval of a settlement in which OneAZ agrees to pay

a total settlement amount of $100,000. This includes $63,500.16 allocated to a settlement fund from which each class member will be paid $1,984.38 by check. (Mot. at 8–9.) The remaining $36,499.84 will be spent as follows: (1) MALDEF will seek fees and costs of up to $24,999.84, which OneAZ has agreed not to oppose; (2) settlement administration costs of $6,500 will be paid to Phoenix Settlement Administrators; and a service award of up to $5,000 will be paid to Plaintiff. (*Id.* at 10–11, 17.) Class Members need not submit a claim form or take any other action to receive payment because checks will be mailed to member's last known address. (*Id.* at 9.) Any checks that remain uncashed 150 days after issuance will not revert to OneAZ; instead, those amounts will be paid in equal parts to two cy pres recipients that serve non-citizens and thus bear a nexus to the alleged discrimination at issue: TheDream.US and the Florence Immigrant & Refugee Rights Project. (*Id.* at 9–10.)

In addition to the financial relief obtained on behalf of the Settlement Class, the Settlement includes remedial relief. OneAZ represents that it has ceased the Challenged Practice and agrees that it will not deny financial products, services, or consumer credit products to otherwise qualified applicants based only on alienage or immigration status or on a closely related proxy such as an ITIN or a "For Work Purposes Only" social security number, unless required by binding law, rules, or regulations, and further agrees that it will amend its underwriting criteria and will train its managers, supervisors, and staff on the corrective action. (*Id.* at 9.)

**1. Non-Collusive Settlement Negotiations**

The means and negotiations by which the parties settled the action must be evaluated under the first factor. *Horton*, 266 F.R.D. at 363. Courts bear the obligation to evaluate the scope and effectiveness of the investigation plaintiffs conducted prior to reaching an agreement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 397 (C.D. Cal. 2007) ("Federal courts are inherently skeptical of pre-certification settlements, precisely because such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the discovery

necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement."); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) ("Where . . . parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." (quotation marks omitted)).

The settlement reached by the parties in this case resulted from lengthy, arms-length negotiations. (Mot. at 15.) Indeed, the parties "engaged in significant substantive discussions to ascertain the class size, to address the legal claims, to negotiate the terms of the Settlement and distribution of the Settlement Fund, and to select a settlement administrator." (*Id* at 15–16.) Those discussions included "multiple offers and counter-offers over several months until a settlement in principle was reached." (*Id* at 16.) The nature of the negotiations in this case do not suggest any collusion or raise any concerns, except as addressed in the following section.

**2. No Obvious Deficiency**

For purposes of determining whether there is an obvious deficiency, the Ninth Circuit has identified three particular warning signs "that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations": (1) "When counsel receive a disproportionate distribution of the settlement," (2) "clear sailing" provisions requiring payment of attorneys' fees separate from class compensation and where a defendant promises not to challenge agreed-upon fees, and (3) reverter provisions that result in unawarded fees reverting to defendants rather than to the class. *In re Bluetooth*, 654 F.3d at 947; *Briseño v. Henderson*, 998 F.3d 1014, 1026–27 (9th Cir. 2021) (identifying "red flag" of a clear sailing arrangement where the defendant "agreed not to challenge the agreed-upon fees for class counsel," which "signal[ed] the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members").

The Settlement does not raise the first and third concerns, identified above, but it does involve a "clear sailing" provision: OneAZ has agreed to pay MALDEF's attorneys'

fees and costs of up to $24,999.84, which will be funded separately from the payments to the class members. (Mot. at 16.) That being said, OneAZ "has no knowledge of the actual amount of [MALDEF's] fees and costs, (*id.*), and the maximum amount of fees that can be sought is relatively small when viewed both in isolation and as compared to the total settlement amount. Accordingly, while the clear sailing provision raises some concerns, it is apparent that MALDEF has not allowed its self-interest to infect negotiations in this case. Rather, it is apparent that MALDEF has obtained significant relief on behalf of the Settlement Class.

**3. No Preferential Treatment**

District courts must be "particularly vigilant" for signs that counsel has allowed the pursuit of certain class members' interests to impact negotiations. *See In re Bluetooth*, 654 F.3d at 947. Accordingly, preliminary approval of a class settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Class representatives are, however, "eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. These payments "are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). Such payments, however, must be evaluated individually to avoid "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion," and this evaluation entails balancing "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Staton*, 327 F.3d at 975, 977.

In this case, the incentive payment to Plaintiff of $5,000 is nominal and reflects her willingness to advocate for the Settlement Class, the members of which may have not been willing to advocate on behalf of themselves. The amount requested does not suggest that

MALDEF put Plaintiff's interests ahead of the other members of the Settlement Class given the significant financial recovery obtained on their behalf, as well as the non-financial prospective relief from which they will benefit should they seek financial products from OneAZ in the future.

**4. Within Range of Possible Approval**

Finally, courts focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer" when evaluating whether a settlement falls "within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1080.

The Motion reflects significant value flowing to the Settlement Class on what Plaintiff concedes is a novel theory of relief with difficult-to-calculate damages. (Mot. at 15.) Furthermore, the portion of the Settlement providing for cy pres payment of unclaimed portions of the settlement fund does not raise concerns. "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries. Cy pres distributions must account for the nature of the plaintiff's lawsuit, the objective of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (internal citation omitted). There must be "a driving nexus between the plaintiff class and the cy pres beneficiaries" in order to avoid the "many nascent dangers to the fairness of the distribution process." *Id.* at 1038. Here, the proposed cy pres recipients provide services to immigrants like those who comprise the Settlement Class, minimizing concerns about this structure.

**C. Proposed Class Notice and Notice Program**

The parties have proposed a form of class notice, as well as a program for giving that notice, to the members of the Settlement Class. Rule 23(c)(2)(B) sets forth the requirements for notice to a class certified under Rule 23(b)(3):

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort . . . . The notice must clearly and

concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In addition to outlining the contents of the notice, Rule 23 requires that the notice be provided via "United States mail, electronic means, or other appropriate means." *Id.* Additionally, the Supreme Court has explained that due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The draft notice and notice program proposed by the parties satisfy the requirements of Rule 23 and due process. Accordingly, they will be adopted, with one exception: the paragraphs concerning attorneys' fees and the incentive fee to Plaintiff, (Doc. 53-2 at 21–22), shall clearly state that (a) attorneys' fees and any incentive fee for Plaintiff will be paid by OneAZ in addition to the amount paid into the Settlement Fund, and (b) the total payment by OneAZ to settle this action—comprised of the Settlement Fund, attorneys' fees, incentive fee for Plaintiff, and settlement administration costs—is $100,000.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Plaintiff's Notice of Motion and Unopposed Motion for Preliminary Approval of Class Settlement (Doc. 53).

**IT IS FURTHER ORDERED** as follows:

1. Preliminary Approval of Settlement Agreement. I preliminarily approve the Settlement Agreement.

2. Class Definition. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, I preliminarily certify, solely for purposes of effectuating the Settlement Agreement, the following Settlement Class: "All persons who, on or before January 26, 2024, resided in the United States at the time they applied for or attempted to apply for a financial product or service from OneAZ Credit Union, but were denied full and equal consideration by OneAZ Credit Union on the basis of alienage or immigration status."

3. Preliminary Class Certification for Settlement Purposes Only. I preliminarily find, solely for purposes of the Settlement Agreement, that the Rule 23 criteria for certification of the Settlement Class are satisfied. This certification of the Settlement Class shall not constitute, nor be construed as, an admission on the part of the Defendant OneAZ Credit Union that any other proposed or certified class action is appropriate for class treatment under the Federal Rules of Civil Procedure or any similar statute, rule, or common law. The entry of this Order is without prejudice to the rights of Defendant to oppose class certification in this action, should the settlement not be approved or not be implemented for any reason, or to terminate the Settlement Agreement, as provided in this Order.

4. Class Representatives. I preliminarily appoint Deyra Carranza Aguilar as the class representative of the Settlement Class ("Class Representative").

5. Class Counsel. I preliminarily appoint Thomas A. Saenz and Eduardo Casas of the Mexican American Legal Defense and Educational Fund and Daniel Ortega of the Ortega Law Firm as counsel for the Settlement Class ("Class Counsel").

6. Administration. I appoint Phoenix Settlement Administrators as the administrator of the Settlement Agreement ("Settlement Administrator"). The Settlement Administrator is directed to perform all settlement administration duties set forth in, and pursuant to the terms and time periods of, the Settlement Agreement, as well as this Order.

The Settlement Administrator must serve the CAFA notice pursuant to 28 U.S.C. § 1715 no later than 90 days before the Final Approval Hearing date set forth in Paragraph 14 below.

7. Form of Class Notice. I approve the form and content of the proposed long form notice and short form notice (collectively, "Notice"), except that the Notice must be modified to state that (a) attorneys' fees and any incentive fee for Plaintiff will be paid by OneAZ in addition to the amount paid into the Settlement Fund, and (b) the total payment by OneAZ to settle this action—comprised of the Settlement Fund, attorneys' fees, incentive fee for Plaintiff, and settlement administration costs—is $100,000.

8. I authorize the parties to make non-material modifications to the Notice prior to mailing if they jointly agree that any such changes are appropriate.

9. Notice. No later than the date specified in Paragraph 14 below, the Settlement Administrator shall provide the Notice to the members of the Settlement Class ("Class Members") pursuant to the terms of the Settlement Agreement. The Parties shall coordinate with the Settlement Administrator to provide notice to the Class Members pursuant to the terms set forth therein.

10. Opting Out from the Class. Any Class Member who wishes to be excluded from the Class must send to the Settlement Administrator by U.S. Mail a personally signed letter, including their (a) full name and address, (b) a clear statement communicating that they elect to be excluded from the Settlement Class and do not wish to be a Class Member, and (c) their signature and the date. Any such request for exclusion must be postmarked and sent to the Settlement Administrator no later than the date specified in Paragraph 14 below (the "Bar Date"). The Settlement Administrator shall forward copies of any written requests for exclusion to the parties' counsel.

11. Binding Impact. If the proposed Settlement Agreement is finally approved, any potential Class Member who has not submitted a timely written request for exclusion on or before the Bar Date shall be bound by all terms of the Settlement Agreement and any final approval order and final judgment. All persons or entities who properly exclude

themselves from the Settlement Class shall not be Class Members and shall relinquish their rights or benefits under the Settlement Agreement, should it be approved, and may not file an objection to the Settlement Agreement or be entitled to any settlement benefits.

12. Objections: Any Class Member who has not filed a timely written request for exclusion may object to the fairness, adequacy, or reasonableness of the Settlement Agreement, or to the requested award of attorneys' fees and expenses, or the service awards. Any Class Member who objects to the fairness, reasonableness, and/or adequacy of the Settlement Agreement must, in addition to filing the written objection no later than the Bar Date, provide a copy of the written objection by U.S. mail to the Settlement Administrator. The Settlement Administrator shall forward copies of any objections to the parties' counsel.

13. Objection Contents: Any objecting Class Member must include in the objection:

a. the objector's full name, address, telephone number, and the contact information for any attorney retained by the objector in connection with this case;

b. a statement of the factual and legal basis for each objection and any exhibits the objector wishes the Court to consider; and

c. a statement as to whether the objector intends to appear at the final approval hearing, either in person or through counsel, and if through counsel, identifying counsel by name, address, and telephone number.

14. Waiver. Any Class Member who has not properly filed a timely objection in accordance with the deadline and requirements set forth in this Order and the Class Notice shall be deemed to have waived any objections to the Settlement Agreement and any adjudication or review of the Settlement Agreement by appeal or otherwise.

15. Settlement Deadlines. For the purposes stated and defined in the Settlement Agreement, I set the following dates and deadlines. If any deadline set forth in this Order falls on a weekend or federal holiday, then such deadline shall extend to the next business

day. These deadlines may be extended by court order, for good cause shown, without further notice to the Settlement Class. Settlement Class Members must check the Settlement Administrator's website regularly for updates and further details regarding the settlement:

| Event | Date Ordered by Court |
|---|---|
| Deadline for the Settlement Administrator to mail notice and for Settlement Website to go live | October 9, 2026 |
| Deadline to file Motion for Final Approval and Motion for Award of Fees, Costs, and Service Award | November 8, 2026 |
| Bar Date for Class Members to Opt Out or Object | December 8, 2026 |
| Final Fairness Hearing will be held at Courtroom 502, 401 W. Washington St., Suite 130, SPC 1 Phoenix, AZ 85003-2118, or by video conference as determined by court order. | Date: Thursday, January 7, 2027<br><br>Time: 9:00 a.m. |
| Deadline for Defendant to transfer the Settlement Fund, amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and fees and costs payable to the Settlement Administrator | 10 days after Final Approval Order |
| Effective Date (assuming no appeals) | 30 days after Final Approval Order |
| Settlement Administrator to pay amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and Individual Settlement Payments | 40 days after Final Approval Order |

16. Termination of Settlement. If the settlement is not approved or consummated for any reason whatsoever, the Settlement Agreement and all proceedings in connection therewith shall terminate without prejudice to the status quo ante and rights of the parties as they existed prior to the date of the execution of the Settlement Agreement, except as otherwise provided in the Settlement Agreement.

17. Stay of Proceedings. All proceedings in this action are stayed until further order of this Court, except as may be necessary to implement or comply with the terms of

the Settlement Agreement.

18. No Merits Determination. By entering this Order, I do not make any determination as to the merits of this case. Neither this Order, the fact that a settlement was reached and filed, the Settlement Agreement, nor any related negotiations, statements, or proceedings shall be construed as, offered as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Defendant.

19. Retaining Jurisdiction. I shall maintain continuing jurisdiction over these settlement proceedings to ensure the effectuation thereof for the benefit of the Settlement Class, and for any other necessary purpose.

Dated this 9th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge